**CONSOLIDATED AMERICAN
INSURANCE COMPANY,**
Appellant,

v.

Charles Dwain **ANDERSON,** Norma J. **Harless,** Billy **Harless,** Individually and as Next Friend of Lisa **Harless,** Appellees.

No. 96–CA–3065–MR.

Court of Appeals of Kentucky.

Nov. 21, 1997.

Discretionary Review
Denied by Supreme Court May 13, 1998.

Charles G. Wylie, Lexington, for Appellant.

Lawrence R. Webster, Pikeville, Phillip D. Damron, Prestonsburg, for Appellees.

Before ABRAMSON, KNOPF and MILLER, JJ.

## OPINION

ABRAMSON, Judge.

Consolidated American Insurance Company ("Consolidated") appeals from a judgment requiring it to provide coverage for a vehicle which was not listed as a "covered auto" in a commercial automobile insurance policy issued to Appellee Charles Dwain Anderson ("Anderson"). In concluding that the policy must be construed as affording coverage for a vehicle not owned or operated by Anderson but used by one of his employees for business purposes, the trial judge found the "covered auto" provision in question analogous to the type of exclusionary language our Supreme Court refused to enforce as against public policy in *Bishop v. Allstate Insurance Company*, Ky., 623 S.W.2d 865 (1981), and *Beacon Ins. Co. of America v. State Farm Mutual Ins. Co.*, Ky., 795 S.W.2d 62 (1990). We disagree and reverse.

The facts are not in dispute. On January 11, 1992, Consolidated renewed a commercial automobile insurance policy for Anderson who does business as Anderson Landscaping in Regina, Kentucky. The only vehicle listed as a covered auto on this policy was a 1986 Ford F150 pickup truck. The liability coverage purchased was well in excess of that required by Kentucky law. Anderson's employee, Ricky Keathley, was driving a 1986 Nissan automobile owned by Rocky Morrow in the course of company business when he and Appellee Norma Harless were involved in an accident. Morrow was another of Anderson's employees and maintained a liability policy applicable to the Nissan. As a result of injuries sustained in the accident, Norma Harless and her husband, Appellee Billy Harless, filed suit in Pike Circuit Court against Keathley and Morrow. The Harlesses eventually amended their complaint to add Anderson as a defendant under the doctrine of respondeat superior.

Consolidated subsequently agreed to defend Anderson under a reservation of rights and filed the instant declaratory judgment action for a determination of its duty to defend and indemnify Anderson under its commercial automobile policy. Consolidated argued that the policy did not cover Anderson as the employer of Keathley since Keathley was not driving the only vehicle listed as a "covered auto" at the time of the accident. Consolidated also contended that the commercial automobile policy was not, and could not be construed to be, a general liability policy. The trial judge agreed with the Harlesses' contention that the Kentucky Motor Vehicle Reparations Act ("MVRA") precluded enforcement of the policy language that limited its coverage to the specifically named "covered auto." Citing *Bishop* and *Beacon, supra*, the judge determined that it was reasonable to conclude that "Anderson purchased the insurance policy to protect all vehicles used for his business purpose, not just the Ford pick-up" and that it was "also quite foreseeable to the Plaintiff [Consolidated] that Anderson may have employees who would in the scope and course of their employment use vehicles not owned by their employers (sic)." Thus, in the opinion of the trial judge, the public policy considerations underlying the MVRA precluded application of the "covered auto" provision of the policy.

In this appeal, Consolidated argues that the trial judge misapplied the public policy provisions of the MVRA (specifically the minimum insurance requirements) and misapplied the reasonable expectations doctrine to the facts of this case. We agree that neither public policy nor the reasonable expectations doctrine can supply Anderson with additional insurance coverage which he could have purchased, but did not purchase, when he contracted with Consolidated.

The MVRA minimum insurance requirement relied upon by our Supreme Court in *Bishop*, and *Beacon Ins.* was also at issue in *Brown v. Atlanta Casualty Company*, Ky. App., 875 S.W.2d 103 (1994), a case in which this Court enforced an insurance policy provision denying basic reparation benefits to an eighteen-year old driving his own uninsured vehicle. Brown, the driver, sought recovery from his father's insurance carrier. The father's policy specifically excluded injuries sustained by a relative while occupying an uninsured vehicle owned by that relative. Brown argued that KRS 304.39–020(3) defines "basic reparation insured" to include "a relative residing in the same household with the named insured ..." and therefore the

policy provision could not be enforced. This Court upheld the exclusion as totally consistent with the public policy embodied in the MVRA:

> We hold that the exclusion is valid as a matter of law. Kentucky's Motor Vehicle Reparations Act (Subtitle 39) (Act) was designed:
>
>> "To require owners, registrants and operators of motor vehicles in the Commonwealth to procure insurance covering basic reparation benefits and legal liability arising out of ownership, operation or use of such motor vehicles."
>
> KRS 304.39–010(1).
>
> A more clear and emphatic expression of public policy cannot be imagined.

875 S.W.2d at 104. The *Brown* Court noted that this public policy was effectuated by KRS 304.39–080(5) which provides in relevant part:

> [E]very owner of a motor vehicle registered in this Commonwealth or operated in this Commonwealth by him or with his permission, shall continuously provide with respect to the motor vehicle while it is either present or registered in this Commonwealth, and any other person may provide with respect to any motor vehicle, by a contract of insurance or by qualifying as a self-insurer, security for the payment of basic reparation benefits in accordance with this subtitle and security for payment of tort liabilities, arising from maintenance or use of the motor vehicle.

The Court reasoned that allowing an uninsured motorist driving his own uninsured vehicle to recover basic reparation benefits from a parent's policy would "circumvent the very purpose of the Act." *Id.* The *Brown* Court refused to strike the challenged provision of the policy because to do so would undermine the public policy of requiring "every owner of a motor vehicle registered ... or operated" in Kentucky to maintain insurance on such vehicle as security for basic reparation benefits and tort liability.

The *Brown* case is distinguishable from the two cases relied upon by the trial court in this case. In *Bishop, supra,* the owner-driver of the vehicle, Bishop, had secured coverage for his vehicle but the policy did not extend to "bodily injury to relatives of the insured residing in his household." Our Supreme Court held that the so-called "household exclusion" could not be invoked by the insurer to deny recovery to Bishop's wife when she was injured in a single car accident in which he was the driver. The *Bishop* court summarized its holding as follows:

> An exclusionary clause in an insurance contract which reduces below minimum or eliminates either of these coverages effectively renders a driver uninsured to the extent of the reduction or elimination. Because the stated purpose of the MVRA is to assure that a driver be insured to a minimum level, such an exclusion provision contravenes the purpose and policy of the compulsory insurance act.... Consequently, family or household exclusionary clauses in insurance contracts that dilute or eliminate the minimum requirements of BRB *or* tort liability coverage are void and unenforceable.

623 S.W.2d at 866.

Similarly in *Beacon Ins. Co.* the Bargers had insured their family vehicle but the policy specifically listed their son as an "excluded driver." When the son was involved in an injury accident while driving the family car, the insurer denied coverage. Again, our Supreme Court concluded that the provision effectively rendered the motor vehicle owner and operator uninsured in violation of the Commonwealth's compulsory insurance statute.

Notably, in both *Bishop* and *Beacon Ins.* the insured had purchased liability coverage for the vehicle involved in the accident but coverage was denied because of policy language which diminished or eliminated that purchased coverage, *i.e.,* exclusion of coverage based on the identity of the driver (language specifically excluding the son in *Beacon Ins.*) or the identity of the injured party (language excluding family members in *Bishop*). In *Brown,* the young driver never insured his own vehicle and then sought to extend his father's policy to that car on the basis that he was a relative still residing at home. This Court rejected the proposition

that public policy required an insurer to provide coverage in such circumstances for a vehicle never listed on the policy.

This case presents yet a different scenario in that the owner of the vehicle, Morrow, was insured in accordance with KRS 304.39–080(5) but another party, Anderson (as the driver's employer), also has potential liability for the actions of the vehicle's driver under the theory of respondeat superior. The MVRA specifically recognizes that Anderson could have bought liability coverage on other vehicles which he did not own. While KRS 304.39–080(5) states that the owner "shall continuously provide" such coverage, it further states that "any other person *may* provide" liability coverage on a vehicle owned by someone else. Without question Kentucky public policy embodied in the MVRA required Morrow to insure the Nissan but simply provided Anderson with the option of insuring that vehicle or any other vehicle owned by someone else. Any suggestion that public policy required Anderson to have coverage, and by extension required Consolidated to provide coverage, in these circumstances ignores the plain language of the statute.

Moreover, it is undisputed that under the commercial automobile insurance policy in question Anderson could have purchased liability coverage that would have protected him in this situation. Category "9" coverage applies to "Nonowned 'Autos' Only" (autos the insured does not own, lease, hire, rent or borrow that are used in connection with his or her business, including autos owned by employees but only while used in the business). Thus because Morrow was Anderson's employee, category 9 of the policy would have provided coverage had Anderson purchased it. Having failed to purchase this optional coverage, Anderson cannot invoke public policy to cure his own omission.

 Additionally, if coverage were provided under Anderson's theory, there would be little, if any, incentive to insure more than one vehicle regardless of how many vehicles a company had in its fleet or utilized in the operation of its business. Anderson's suggested approach to the purchase of insurance

protection is similar to the one recently discredited in *Omni Insurance Company v. Coates,* Ky.App., 939 S.W.2d 879 (1997). Coates owned two automobiles, a 1989 Pontiac and a 1980 Chevrolet. Although she sought and obtained insurance coverage on the Pontiac only, she claimed entitlement to basic reparation benefits for injuries sustained while driving the Chevrolet. In rejecting her contention that KRS 304.39–050(2) entitled her to recover basic reparation benefits from Omni, this Court offered the following analysis:

> To allow her to do so would in effect allow every person in Kentucky who owns more than one vehicle to meet their insurance obligation by insuring only one of their vehicles and to hold their own insurer liable for coverage on a vehicle which was not contemplated or intended to be covered. We agree with Omni that it would be most unreasonable for Coates to believe that injuries sustained by her while driving the uninsured Chevrolet would be covered under the policy providing coverage only for the Pontiac.

939 S.W.2d at 881. There are obvious factual differences between Anderson's situation and that addressed in *Coates.* The driver in *Coates,* like the driver in *Brown,* was seeking basic reparation benefits for her own benefit rather than liability protection from the personal injury claims of third parties. Despite this distinction, we are convinced that the *Coates* rationale is still applicable. An insured who chooses not to insure a particular vehicle he or she owns or who chooses not to purchase optional coverage for vehicles he or she may drive cannot rely on public policy to supply such coverage after an accident has occurred.

 Finally, if Anderson is uninsured as to the claim at issue, it is because he did not purchase the optional automobile liability coverages previously discussed or even a general liability policy covering his landscaping business. His present status did not arise because the Consolidated policy is in any way ambiguous or violative of his reasonable expectations. Anderson has invoked the reasonable expectations doctrine which, as Consolidated notes, is applicable only where

the policy at issue is ambiguous. *Simon v. Continental Ins. Co.,* Ky., 724 S.W.2d 210 (1986). We find nothing ambiguous in the policy language relevant to this appeal. In addition, where the reasonable expectations doctrine does apply, as we recently stated in *Estate of Swartz v. Metropolitan Property and Casualty Co.,* Ky.App., 949 S.W.2d 72, 76 (1997), "[u]nder controlling Kentucky law, the proper area of inquiry is what [the insureds] could reasonably expect in light of what they actually paid for, not what they personally expected or whether those expectations could be ascertained." In our opinion, Anderson could not have reasonably anticipated protection for claims such as this given what he paid for and the plain language of his policy.

The judgment of the Pike Circuit Court is reversed.

All concur.